IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KENT MALONE-BEY**  **PLAINTIFF**

v.  **CIVIL ACTION NO.: 3:25-cv-380-KHJ-MTP**

**LAUDERDALE COUNTY SCHOOL BOARD,** *et al.*  **DEFENDANTS**

## ORDER

THIS MATTER is before the Court on the Motion to Disqualify Butler Snow LLP from Representing Individual Capacity Defendants [17] filed by *pro se* Plaintiff Kent Malone-Bey. For the reasons which follow, the Court finds that the Motion [17] should be DENIED.

## BACKGROUND

Plaintiff sues Defendants Lauderdale County School Board ("School Board"), Dr. John-Mark Cain, Joshua Herrington, Chad D. West, and Antonio Naylor for "violations of federal and state law, including the Americans with Disabilities Act (ADA), the Due Process Clause of the Fourteenth Amendment, and multiple state torts." [1] at 1. Plaintiff's claims stem from events regarding his termination as a Navy Junior Reserve Officers Training Corps instructor at Northeast Lauderdale High School in the Lauderdale County School District.

According to Plaintiff, Defendant West, a teacher employed by the Lauderdale County School District, "reported to Plaintiff and later to school officials that he had overheard Plaintiff making a threatening statement during a private phone conversation." *Id*. at 3. Defendant Herrington, the Principal of Northeast Lauderdale High School, then suspended Plaintiff "without any investigation." *Id*. Plaintiff alleges that the Defendants later held a termination hearing and terminated him "without cause, based solely on hearsay and malice." *Id*. at 5.

1

Defendants Cain, Herrington, West, and the School Board filed their Answer [8] to the Complaint [1] through their counsel, Butler Snow.[1] They raised various defenses, including "each and every privilege, immunity, restriction, and/or limitation of the Mississippi Tort Claims Act" (MTCA). [8] at 2. Herrington and West also said that they are entitled to qualified immunity in their individual capacities. *Id*.

In the instant Motion [17], Plaintiff moves to disqualify Butler Snow from representing Defendants Herrington and West in their individual capacities under Mississippi Rule of Professional Conduct 1.7. He says that the School Board may argue that Herrington and West acted "*outside policy* to avoid liability under the MTCA[,]" and that Herrington and West must argue that they "acted *within policy* to claim qualified immunity." [18] at 2 (emphasis in original). According to Plaintiff, these purported conflicts might cause Butler Snow to "withhold documents harmful to the Board but critical to Plaintiff's case against Herrington/West[,]" and that Herrington and West "cannot receive zealous advocacy if counsel also represents their employer." *Id*. at 3. Therefore, Plaintiff moves the Court to either disqualify Butler Snow from representing Herrington and West individually or to require the production of written valid waivers from the Defendants relating to the representation.[2]

Defendants oppose the Motion [17]. They say that there is no evidence that the School Board intends to argue that Herrington and West acted outside policy and that the positions of Herrington, West, and the School Board are "aligned in this action." [20] at 3. Defendants also say that Plaintiff misinterprets Mississippi Rule of Professional Conduct 1.7 and argue that Rule

---

[1] Defendant Naylor filed his Answer [9] separately.

[2] Butler Snow also represents Defendant Cain, but that representation is not at issue in the instant Motion [17].

1.7(b) is "only relevant *if the representation of the client will be directly adverse to another client*." *Id*. (emphasis in original).  Because there is no conflict among their legal positions, Defendants say that there is no adverse relationship between them and that the Motion [17] should be denied.

## ANALYSIS

"[M]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law. Federal courts may adopt state or American Bar Association [] rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law." *In re Am. Airlines, Inc.,* 972 F.2d 605, 610 (5th Cir. 1992) (citations omitted).  When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself.  *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)).  The Local Rules of this Court specifically adopt the Mississippi Rules of Professional Conduct.[3] *See* L.U. Civ. R. 83.5; *Owens v. First Fam. Fin. Servs., Inc.*, 379 F. Supp. 2d 840, 845 (S.D. Miss. 2005).

Rule 1.7 of the Mississippi Rules of Professional Conduct provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:

(1) the representation will not adversely affect the relationship with the other client; and

(2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

---

[3] The Fifth Circuit has found that the Mississippi Rules "are identical to the American Bar Association's Model Rules of Professional Conduct in all relevant aspects." *United States v. Starnes*, 157 F. App'x 687, 693–94 (5th Cir. 2005).

>   (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
>
>      (1) the representation will not be adversely affected; and
>
>      (2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

Miss. R. Prof'l. Conduct 1.7

While it is generally proper for an opposing party to bring conflict of interest matters to the attention of the court, "[s]uch an objection should be viewed with caution, however, for it can be misused as a technique of harassment." *FDIC*, 50 F.3d at 1315 (internal citation omitted). Accordingly, "[o]n a motion to disqualify, the movant bears the ultimate burden of proof." *Galderma Laboratories, L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013).

Plaintiff argues that Defendants should be disqualified under Rule 1.7(b). Defendants say that Plaintiff misreads the rule, however, and that Rule 1.7(b) is "only relevant *if the representation of the client will be directly adverse to another client*." [20] at 3 (emphasis in original). But Defendants' position defies a plain reading of the Rule. As noted above, Rule 1.7 includes two sections. Rule 1.7(a) applies only if the clients are directly adverse to one another. Rule 1.7(b), which Plaintiff cites in his Motion [17], applies when the representation of the client may be materially limited by the lawyer's responsibilities to another client. Accordingly, the Court's analysis under Rule 1.7(b) does not first require direct adversity between clients.

Turning to the merits, the Court finds that there is no reasonable basis to conclude that Defendants' representation by Butler Snow may be materially limited in this matter under Rule 1.7(b). Indeed, the crux of Plaintiff's argument rests on a hypothetical: the School Board *may*

4

argue that Herrington and West acted outside policy. Defendants counter that this hypothesis is baseless and that there is no evidence that they "intend[] to argue that the individually-named defendants acted outside policy." [20] at 2.

Defendants further argue that Plaintiff's Complaint [1] explains that the School Board upheld the decision to terminate Plaintiff's employment—a decision made by Defendant Cain, as superintendent, "who took action based upon the investigation and report of Defendants Herrington and West." *Id*. at 3 (citing [1] at ¶¶ 12-15). Defendants thus argue that the legal positions of the School Board, Herrington, and West are "aligned in this action," and that there "is no danger of evidence suppression on any part of any defendants." *Id*.

Plaintiff's Reply [21] does little to rebut Defendants' Response [20]. First, Plaintiff highlights the fact that Defendant Naylor is not represented by Butler Snow like the other Defendants. That, says Plaintiff, serves as a "tacit admission that a conflict of interest exists." [21] at 2. Plaintiff also reiterates that Butler Snow "may" withhold material concerning the individual Defendants to the School Board's benefit. Plaintiff has not shown that any such evidence is being withheld, nor has he alleged having asked for and having been denied such information.

Finally, Plaintiff says that he "cannot obtain fair discovery when counsel filters information to protect the Board." *Id*. at 3. But Plaintiff has not demonstrated the occurrence of any such filtration (past or present). Further, it should be noted that discovery has not even started, and a Rule 16 Order has not yet been entered in this matter. Discovery issues can be addressed if and when they arise, but they have no bearing on the issue of whether there exists a conflict of interest.

In sum, Plaintiff has not shown that Butler Snow should be disqualified from representing Defendants Herrington and West at this time. As discussed herein, Plaintiff's Motion [17] hinges upon the notion that conflicts *may* arise. But the mere assertion that potential conflicts may arise is not enough to warrant disqualification. *See* Miss. R. Prof'l Conduct 1.7 cmt. (noting that a "possible conflict does not preclude" joint representation). Accordingly, the Court denies the Motion [17].[4]

### *Plaintiff's Citations to Fictitious Legal Opinions and Holdings*

The Court *sua sponte* addresses a separate issue: Plaintiff's continued use of fake, non-existent legal opinions in his filings before the Court. This practice unfortunately is not unique to the instant matter as the number of filings that include fictitious legal opinions is rising. This trend, perhaps, correlates to the frequency at which our society is embracing and utilizing generative artificial intelligence ("AI") programs in everyday life, including legal matters. AI is certainly a tool capable of providing immense benefits and efficiency in the legal profession or in legal matters. Those benefits, however, are not without risk.

Starting with the obvious, it is well-known that AI can generate fake sources of information, commonly referred to as "AI Hallucinations." *Wadsworth v. Walmart, Inc*., 348 F.R.D. 489, 493 (D. Wy. 2025). And individuals who use AI for legal research find that they are not immune from these hallucinations. Indeed, AI programs are known to hallucinate nonexistent cases. *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025). As AI programs advance, they only increase the difficulty in which users (and the courts) may determine whether a case provided by an AI program is in fact "hallucinated."

---

[4] Moreover, it is not uncommon that the same law firm represents both the school entity and the individual defendants. *See, e.g.*, *Buckner v. W. Tallahatchie Sch. Dist.*, 2022 WL 1815987, at *1 (N.D. Miss. June 2, 2022).

That is because hallucinated cases look like real cases. They are identified by a case name, a citation to a reporter, the name of a district or appellate court, and the year of the decision. *United States v. Hayes*, 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025). But, they are not real cases. These hallucinated cases are instead inaccurate depictions of information from AI models that suffer from incomplete, biased, or otherwise flawed training data. *Wadsworth*, 348 F.R.D. at 493. Thus, "[w]hen used carelessly, [AI] produces frustratingly realistic legal fiction that takes inordinately longer to respond to than to create. While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true." *Ferris v. Amazon.com Servs., LLC*, 2025 WL 1122235, at *1 (N.D. Miss. Apr. 16, 2025).

Here, Plaintiff's Brief [18] overflows with either citations to fake, nonexistent cases or existing cases with incorrect legal propositions, i.e., the hallmarks of AI hallucinations. It therefore appears that Plaintiff may have used generative AI to assist in legal research and drafting his motion briefs.

As just one example, Plaintiff cites *Coleman v. Ret. Plan for Dist. Managers*, 969 F.3d 142, 149 (5th Cir. 2020) for the proposition that courts may disqualify counsel to "preserve the integrity of the adversary process." [18] at 2. But the *Coleman* case does not exist.[5] By citing

---

[5] This is not the first time Plaintiff has cited fictitious legal holdings before the Court. In his Memorandum in Support of Motion for Preliminary Injunction [7], Plaintiff cites *Harris v. Canton MS Sch. Dist.*, 655 F.3d 762 (5th Cir. 2011) for the proposition that schools "must strictly follow contract terms." [7] at 1. That case does not exist, although the undersigned located the following similarly named case: *Harris v. Canton Separate Pub. Sch. Bd. of Educ.*, 655 So. 2d 898 (Miss. 1995). In actuality, the reporter citation provided by Plaintiff, "655 F.3d 762," is for a different case: *Park Hill Sch. Dist. v. Dass*, 655 F.3d 762 (8th Cir. 2011). This is likely yet another example of an AI hallucination.

(and quoting) a fake opinion,[6] Plaintiff undermines the very integrity that he urges this Court to uphold. Indeed, submitting fictitious cases and quotations to the Court degrades or impugns the integrity of the Court. *Hayes*, 763 F. Supp. 3d at 1054. Moreover, Plaintiff's attempt to persuade the Court "by relying on [a] fake opinion[] is an *abuse* of the adversary system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (emphasis added).[7]

Even if Plaintiff did not use AI to assist with citing legal opinions and holdings, he still must comply with Federal Rule of Civil Procedure 11. *See Yazdchi v. Am Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007). Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2).

By citing to fake legal opinions (or hallucinated legal holdings therein), Plaintiff not only wasted the Court's time and judicial resources, but he also violated his Rule 11 obligations. *See*

---

[6] Plaintiff also cited to the fictitious *Coleman* case for the proposition that a conflict arises "where one client's defense 'undercuts' another's." [18] at 2. And in his Reply [21], Plaintiff opened with *Coleman* for the proposition that, "[a]bsent written waivers, joint representation is per se improper." [21] at 2.

[7] Plaintiff also cited existing cases in his Brief [18] and Reply [21]. But the language quoted by Plaintiff from many of those cases do not appear in the decisions. For example, Plaintiff cites *Wheat v. U.S.*, 486 U.S. 153, 160 for the proposition that an "'[A]ttorney's conflicting obligations to multiple defendants' undermine fairness." [18] at 3. And he cites *United States v. $114,031.00 in U.S. Currency*, 284 F. App'x 754, 756 (11th Cir. 2008) for the holding that "[a] court may infer admissions from a party's litigation conduct." [21] at 2. Neither statement, as quoted by Plaintiff, can be found within these cases. Thus, not only did Plaintiff use a non-existent case in his briefs, but he also misrepresented holdings in existing cases.

*Benjamin v. Costco Wholesale Corp.*, 2025 WL 1195925, at *2 (E.D.N.Y. Apr. 24, 2025) ("an attorney [or *pro se* party] who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure") (emphasis in original). Plaintiff is therefore reminded of his obligations under Rule 11 as stated herein and advised that future filings before this Court must contain only accurate representations and citations. Additionally, Plaintiff is warned that future filings with citations to fictitious legal opinions and holdings or which do not otherwise comply with Rule 11 may result in sanctions, including but not limited to the striking of filings and the imposition of monetary penalties. *Sanders*, 176 Fed. Cl. at 170 (2025); *Ferris*, 2025 WL 1122235, at *2-3.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion to Disqualify Butler Snow LLP from Representing Individual Capacity Defendants [17] is DENIED; and

2. Plaintiff is reminded of his Rule 11 obligations as stated herein and warned that future filings with citations to fictitious legal opinions and holdings in filings before the Court, or which do not otherwise comply with Rule 11, may result in sanctions, including but not limited to striking Plaintiff's filings and monetary penalties.

SO ORDERED, this the 25th day of July, 2025.

s/Michael T. Parker<br>
United States Magistrate Judge